UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 03-12635-MLW

JOHN SANCES and KENNETH SANCES,
individually and in their capacity as TRUSTEES
OF THE 305 UNION STREET REALTY TRUST,

      Plaintiffs

v.

TOWN OF HOLBROOK, GEORGE JAMESON,
JOHN CALLAHAN, JOHN PAPP, CLIFF JACOB
and JACK CULHANE, individually and as
members of the Holbrook Planning Board, and
DANIEL MORIARTY, individually and as
Building Inspector for the Town of Holbrook,

      Defendants

INDIVIDUAL DEFENDANTS'
MOTION FOR JUDGMENT ON
THE PLEADGINS PURSUANT
TO FED.R.CIV.P.12(C)

Now come the individual defendants, George Jameson, John Callahan, John Papp, Cliff

Jacob, Jack Culhane, and Daniel Moriarty (collectively, the "Individual Defendants") and hereby

move, pursuant to Fed.R.Civ.P. 12(c), that this Honorable Court dismiss all claims against them.

As grounds therefor, the Individual Defendants state that the Complaint fails to state a claim

upon which relief may be granted. As further grounds, the Individual Defendants rely on the

accompanying Memorandum.

    WHEREFORE, the Individual Defendants respectfully request that this Court dismiss all

claims against them.

INDIVIDUAL DEFENDANTS

By their attorneys,

Jonathan M. Silverstein (BBO# 630431)
Jackie Cowin (BBO# 655880)
Kopelman and Paige, P.C.,
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail here on  3/2/04

216704/METG/0518

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 03-12635-MLW

JOHN SANCES and KENNETH SANCES,
individually and in their capacity as TRUSTEES
OF THE 305 UNION STREET REALTY TRUST,

     Plaintiffs

v.

TOWN OF HOLBROOK, GEORGE JAMESON,
JOHN CALLAHAN, JOHN PAPP, CLIFF JACOB
and JACK CULHANE, individually and as
members of the Holbrook Planning Board, and
DANIEL MORIARTY, individually and as
Building Inspector for the Town of Holbrook,

     Defendants

MEMORANDUM IN SUPPORT
OF INDIVIDUAL DEFENDANTS'
MOTION FOR JUDGMENT ON
THE PLEADINGS

I.    INTRODUCTION

This action arises from an order by the Building Inspector for the Town of Holbrook

("Town") that the plaintiffs cease and desist work on a building project, due to plaintiffs'

repeated failure to meet certain conditions imposed in a Special Permit for the project issued by

the Town's Planning Board ("Board"). Count I of the Complaint seeks a declaratory judgment

that the Board did not have authority to impose certain conditions on the project, and further

seeks the Court's interpretation of other conditions imposed on the project. Count II asserts an

unspecified intentional tort, which appears to be intentional interference with contractual

relations. Count III asserts a claim under G.L. c. 12, §§11H-11I, the Massachusetts Civil Rights

Act ("MCRA"). Count IV asserts a due process claim under the Fourth and Fourteenth

Amendments.

Defendants George Jameson, John Callahan, John Papp, Cliff Jacob, Jack Culhane and

Daniel Moriarty (the "Individual Defendants") move, pursuant to Fed.R.Civ.P. 12(c), for

dismissal of all claims against them, on the following grounds: (1) the entire Complaint is barred

by the doctrine against claim splitting, because the plaintiffs have challenged the Building

Inspector's order in a pending Superior Court action; (2) Count I is also barred because the

plaintiffs failed to exhaust their administrative remedies; (3) the plaintiffs fail to state a

cognizable due process claim; (4) the plaintiffs fail to allege the requisite elements of an MCRA

claim; (5) the Individual Defendants are entitled to qualified immunity from plaintiffs'

constitutional claims; (6) the Individual Defendants are entitled to qualified immunity from

plaintiffs' intentional tort claim; and (7) the plaintiffs fail to allege the requisite elements of a

claim for intentional interference with contractual relations.[1]

The within Memorandum is submitted in support of the Individual Defendants' motion.

II    RELEVANT FACTS AS PLED IN THE COMPLAINT[2]

1.    The plaintiffs, John Sances and Kenneth Sances are trustees of the 305 Union
      Street Realty Trust. Complaint, ¶¶2-3.

2.    On or about July 18, 1998, the Town of Holbrook Planning Board (the "Board")
      granted the plaintiffs a special permit to construct a building (the "Project") at 305
      Union Street, Holbrook (the "Property"). Complaint, ¶8.

3.    The special permit explicitly required that "the property be constructed and used
      in accordance to the [plaintiffs'] applications and accompanying plans and
      exhibits. Certified Copy of Certificate of Approval, dated July 16, 1998 (Exhibit

---

[1] The Town has contemporaneously filed a Motion to Dismiss all claims against it.

[2] The facts recited herein are taken from the averments of the Complaint and documents referenced in, but not attached to, the Complaint. The Court may consider these documents without converting the Motion to Dismiss into a Motion for Summary Judgment. See Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (when a complaint's allegations are expressly linked to a document, that document effectively merges into the pleadings and the trial court may review it in deciding a Rule 12(b)(6) motion). See also Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1219-1220 (1st Cir. 1996); Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n.3 (1st Cir. 1991); Chatham v. Gentle Dental Center of Waltham, 973 F. Supp. 228, 240 n.6 (D. Mass. 1997).

A), ¶7. The plaintiffs' application provided that the Project would consist of a single-floor building, 20 feet high. <u>Certified Copy of Application for Hearing dated February 19, 1998</u> (Exhibit B), p.1.

4.    On July 30, 1999, the plaintiffs applied for and were granted a building permit to begin construction on the Project from Holbrook Building Inspector Daniel Moriarty ("Moriarty"). <u>Complaint</u>, ¶9.

5.    On or about November 10, 1999, Moriarty issued a cease and desist order to stop construction on the Project, which was approximately 75 percent complete at the time. <u>Complaint</u>, ¶13.

6.    On November 15, 1999, the plaintiffs filed a second application for a special permit from the Board ("Second Application"). <u>Complaint</u>, ¶14. The Second Application sought a permit for a one-floor building with a height of 33 feet, 10 inches, so as to conform to the height of the building already under construction. <u>Certified Copy of Application for Hearing dated 11/15/99</u> (Exhibit C), p.1.

7.    Before hearing the Second Application, the Board advised the plaintiffs that an amendment to the Town's zoning bylaw was pending before Town Meeting that would reduce the maximum allowable building height from 35 feet to 30. <u>Complaint</u>, ¶15.

8.    Based on this information, the plaintiffs withdrew the second application. <u>Complaint</u>, ¶16.

9.    The proposed bylaw amendment was not adopted by Town Meeting. <u>Complaint</u>, ¶17.

10.    On May 11, 2000, the plaintiffs filed a Third Application for a special permit

from the Board ("Third Application"). The Third Application was identical to the

Second Application. Complaint, ¶18.

11.     On or about September 11, 2000, the Board granted the special permit (the

"Special Permit"), attaching 23 conditions. Complaint, ¶19; Certified Copy of

Certificate of Approval dated September 11, 2000 (Exhibit D), p. 3-5.

12.    Conditions imposed in the Special Permit included:

    a.    A maximum height of 33 feet, 10 inches. Exhibit D, p.3,

        ¶2.

    b.    A maximum of one floor. Exhibit D, p.4, ¶9; Complaint, ¶21.

    c.    Conformance with plans submitted to the Board by the

        plaintiffs during public hearings on the Third Application. Said

        plans included certain architectural work to be performed on the

        building's façade. Exhibit D, p.3, ¶1. Complaint, ¶¶21, 38.

    d.    Completion of the Project by September 1, 2002. Exhibit D, p.4,

        ¶7; Complaint, ¶¶19.

    e.    Submission of a landscaping plan for the Premises within

        one year of the issuance of a Certificate of Occupancy.

        Exhibit D, p.5, ¶19; Complaint, ¶¶21.

13.    The plaintiffs did not appeal the conditions imposed in the Special Permit, as was

their right pursuant to G.L. c. 40A, §17.

14.    On August 2, 2001, Moriarty issued the plaintiffs a temporary occupancy permit

for the Property, pending completion of architectural work on the façade of the

building as required by the Special Permit. <u>Complaint</u>, ¶28. The temporary occupancy permit was to expire on September 2, 2001. <u>Complaint</u>, ¶29.

15.    On December 3, 2002, more than 90 days after the deadline imposed in the Special Permit for completion of the Project,[3] counsel for the Board wrote to counsel for the plaintiffs, inquiring about the status of eight of the conditions in the Special Permit. <u>Complaint</u>, ¶30; <u>Certified Copy of Letter from Mark Bobrowski to Gary S. Brackett dated December 3, 2002</u> (Exhibit E).

16.    On December 6, 2002, at a duly posted open meeting, the Board voted to request that Moriarty issue a cease and desist order to stop construction on the Project for noncompliance with the Special Permit conditions. <u>Complaint</u>, ¶32.

17.    On December 10, 2002, the Board wrote to Moriarty, requesting that he issue a cease and desist order to stop construction on the Project, on the grounds that the time for completing required architectural work on the Project's façade had expired. <u>Complaint</u>, ¶33; <u>Certified Copy of Letter from George Jameson to Daniel Moriarty, dated December 10, 2002</u> (Exhibit F)

18.    On or about December 13, 2002, counsel for the plaintiffs wrote to counsel for the Board, advising that a status report regarding the eight conditions would be forthcoming. <u>Complaint</u>, ¶31.

19.    On December 18, 2002, Moriarty issued a cease and desist order to stop construction on the Project. Moriarty further ordered that the plaintiffs cease occupancy at the Premises, as the temporary occupancy permit had expired. <u>Complaint</u>, ¶34. The plaintiffs do not allege, nor could they allege, that they have

---

[3] Though not mentioned in the Complaint, the plaintiffs requested and were granted a 60-day extension, to November 1, 2001, to complete the Project

complied with the Building Inspector's order and ceased occupancy or use of the Property.

20. On January 16, 2002, pursuant to G.L. c. 40A, §8, the plaintiffs filed an administrative appeal of Moriarty's December 18, 2002 order with the Holbrook Zoning Board of Appeals. Complaint, ¶36.

21. On or about February 26, 2003, counsel for the plaintiffs provided counsel for the Board with a status report regarding the eight conditions. The status report stated that five conditions had been completed, while provisions for completion of two conditions had been made; and provided a proposed timetable for the completion of the eighth condition, a landscaping plan for the Property. Complaint, ¶37; Certified Copy of Letter from Gary S. Brackett to Mark Bobrowski dated February 26, 2003 (also included in Exhibit E). The letter further provided a proposed timetable for the completion of the required architectural work to the Project's façade. Complaint, ¶37.

22. The February 26, 2003 letter further stated that the plaintiffs were awaiting a copy of the plans referenced in the Special Permit, as they related to the architectural work still to be completed on the Project's facade. Complaint, ¶38. The plaintiffs had requested a copy of the plans and were advised that the plans were missing from the Board's file. Complaint, ¶40.

23. The plans requested by the plaintiffs were submitted to the Board by the plaintiffs themselves. Complaint, ¶19; Exhibit D, p.1, ¶3.

24. On March 4, 2003, after a hearing at which both counsel for the plaintiffs and members of the Board spoke, the Zoning Board of Appeals voted to affirm

Moriarty's December 18, 2002 cease and desist order. The March 4, 2003

decision was filed with the Town Clerk on March 17, 2003. <u>Complaint</u>, ¶¶41-46.

25.     The plaintiffs have appealed the March 4, 2003 decision of the Zoning Board of

Appeals to the Superior Court in an action docketed as <u>Union Street Realty Trust,</u>

<u>et al.</u> v. <u>Holbrook Zoning Board of Appeals and Daniel Moriarty</u>, Norfolk

Superior Court, C.A. No. 03-00581. <u>Complaint</u>, ¶46; <u>State Court Complaint</u> (the

"Zoning Appeal"), (<u>Exhibit G</u>). Said appeal is pending.

III.    <u>ARGUMENT</u>

   A.    <u>Judgment on the Pleadings Standard</u>

Under Fed.R.Civ.P. Rule 12(c), a complaint must be dismissed if it fails to state a claim

upon which relief may be granted against the defendant. The reviewing court must construe all

well-pleaded material allegations of the complaint as if admitted and all reasonable inferences

must be drawn in the plaintiff's favor. <u>LaManque</u> v. <u>Mass. Department of Employment and</u>

<u>Training</u>, 3 F.Supp.2d 83, 89 (D. Mass. 1998) (<u>citing</u> <u>Santiago de Castro</u> v. <u>Morales Medina</u>, 943

F.2d 129, 130 (1st Cir. 1991)). However, the court is not bound to accept as true conclusions of

law or unwarranted deductions of fact. <u>See</u> <u>Washington Legal Foundation</u> v. <u>Massachusetts Bar</u>

<u>Foundation</u>, 993 F.2d 962, 971 (1st Cir. 1993). Where it appears to a certainty that plaintiff is

entitled to no relief under any state of facts which could be proved in support of her claims,

dismissal is proper. <u>See</u> <u>Ballou</u> v. <u>General Electric Co.</u>, 393 F.2d 398 (1st Cir. 1968).

   B.    All Claims Against the Individual Defendants Are Barred Pursuant to the Doctrine
         Against Claim Preclusion

The Individual Defendants respectfully incorporate by reference and adopt the arguments

set forth in Section III-B of the Memorandum in Support of the Town of Holbrook's Motion to

Dismiss ("Town's Memorandum"), filed contemporaneously with the instant motion. For the

reasons set forth in Section III-B of the Town's Memorandum, all claims against the Individual Defendants should be dismissed pursuant to the doctrine against claim preclusion, because the plaintiffs have filed a pending Superior Court action arising out of the same factual claims as the instant suit. See Exhibit H. The plaintiffs should not be permitted to litigate the same issues in two separate actions, and therefore, the entire Complaint should be barred.

C. Count I Should Also Be Dismissed Because the Plaintiffs Failed to Exhaust Administrative Remedies

The Individual Defendants respectfully incorporate by reference and adopt the arguments set forth in Section III-C of the Town's Memorandum. For the reasons set forth in Section III-C of the Town's Memorandum, Count I should be dismissed because the plaintiffs failed to exhaust their administrative remedies. Pursuant to G.L. c. 40A, §17, the plaintiffs were required to appeal the conditions imposed in the Special Permit, if at all, within twenty days after the decision was filed with the Town Clerk. The plaintiffs failed to pursue their exclusive avenue of appealing the Special Permit conditions, and cannot now challenge the validity of those conditions. See Space Bldg. Corp. v. Commissioner of Rev., 413 Mass. 445, 448, 597 N.E.2d 435 (1992). Therefore, Count I should be dismissed.

D. Count IV, Alleging Due Process Violations, Fails to State a Claim

Count IV alleges that the defendants' actions deprived plaintiffs of their due process rights. The plaintiffs do not identify whether they allege procedural or substantive due process violations; however either claim fails against the defendants because (1) plaintiffs were not denied any process to which they were entitled, and, further, state law provides adequate post-deprivation remedies; and (2) plaintiffs were not deprived of any fundamental constitutional right, nor did the defendants engage in conduct that shocks the conscience, making a substantive due process claim inappropriate.

8

1.    Procedural Due Process Claim

Although the plaintiffs have not identified any process that was denied them, it appears that any procedural due process claim derives either from the assertion that "without notice to the plaintiffs, the Planning Board met on December 6, 2002 and voted to direct the Building Inspector to issue a cease and desist order," Complaint, ¶32; or from the assertion that the plaintiffs have been unable to retrieve from the Planning Board a copy of the plan relating to the exterior detail requirements. Complaint, ¶40.

As to the first issue, the Special Permit set a deadline of September 1, 2002 – two years after the issuance of the permit – for the Project to be completed.[4]   Complaint, ¶19.  On December 6, 2002, therefore, the plaintiffs were building without a permit and, accordingly, the building inspector lawfully issued a cease and desist order.  No notice is required to order the cessation of work under a permit that has expired by its terms, and plaintiffs can cite no requirement that the Planning Board notify the plaintiffs that it is requesting enforcement by another town official.[5]   To the extent that plaintiffs may argue that the letter from Board's counsel, seeking the status of certain conditions, impliedly extended the permit's expiration date or otherwise estopped the Board from enforcing its terms, this claim is negated by the express terms of the letter, which stated that "this letter should not be construed as a waiver of the Board's right to seek zoning enforcement ... now or in the future, if these conditions are not satisfied."  Exhibit E.  Moreover, it is axiomatic that local boards and officials cannot be estopped from enforcing zoning restrictions. Cape Resort Hotels, Inc. v. Alcoholic Licensing Board of Falmouth, 385 Mass. 205, 224, 431 N.E.2d 213, 223-224 (1982) (citing Ferrante v. Board of Appeals of Northampton, 345 Mass. 158, 162, 186 N.E.2d 471, 474-75 (1962)).

---

[4] By statute, a special permit must expire after two years.  See G.L. c. 40A, §9.
[5] Plaintiffs clearly have no property interest in an expired permit.

As to plaintiffs' assertion that they were unable to retrieve from the Planning Board a copy of the plan relating to the exterior detail requirements, these plans were prepared for and submitted by the plaintiffs themselves. As such, the plaintiffs were either in possession of the plans, or could easily obtain another copy from the architect or engineer who prepared them. The inability to procure a copy of something they were already in possession of hardly rises to the level of a constitutional deprivation, and plaintiffs have, at most, alleged a run of the mill zoning dispute under state law. Cf. Cloutier v. Town of Epping, 714 F.2d 1184, 1191 (1st Cir. 1983) ("full judicial-type hearings are not required when local boards engage in the quasi-legislative task of granting or revoking zoning or similar types of permits").

Moreover, even could the plaintiffs allege procedural deficiencies, state law would provide adequate post-deprivation remedies. It is well settled that existence of an adequate state remedy to redress an alleged procedural denial bars a due process claim under 42 U.S.C. §1983. See, e.g., Zinermon v. Burch, 494 U.S. 113, 126, 110 S. Ct. 975, 983 (1990) ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process").

Any complaint plaintiffs may assert with respect to the procedures employed by the Planning Board are remediable under state law, as any action by a "special permit granting authority" is directly appealable to various state courts under G.L. c. 40A, §17. Similarly, any enforcement action by the Building Inspector is appealable, in the first instance, to the Zoning Board of Appeals, and subsequently to the state courts. See G.L. c. 40A, §§8, 17. Indeed, as noted above, plaintiffs have availed themselves of this remedy with an appeal to the Zoning Board of Appeals and, now, an action in Superior Court based on the exact same facts underlying this Complaint. Exhibit H. As state law clearly provides an adequate remedy for any alleged

failure of the Planning Board to provide proper process, any procedural due process claim deriving therefrom fails, and Count IV should be dismissed. Cf. Raskiewicz v. Town of New Boston, 754 F.2d 38, 44 (1st Cir. 1985) ("where ... the state offers a panoply of administrative and judicial remedies, litigants may not ordinarily obtain ...review of local zoning and planning disputes by means of 42 U.S.C. §1983").

     2.    Substantive Due Process Claim

To the extent that Count IV alleges substantive due process violations, it must fail because the plaintiffs have not alleged the deprivation of a "fundamental" constitutional right or conduct that shocks the conscience.

First, plaintiff cannot demonstrate a deprivation of any fundamental constitutional right. "[I]n the realm of substantive due process 'it is only when some basic and fundamental principle has been transgressed that the constitutional line has been crossed.'" Santiago de Castro v. Morales Medina, 943 F.2d 129, 131 (1st Cir. 1991) (and cases cited); see also, e.g., Washington v. Glucksburg, 521 U.S. 702, 720-21, 117 S.Ct. 2258 (1997) (substantive due process protects rights that "are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed"). The protections of substantive due process "have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (citing Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 847-849, 112 S.Ct. 2791, 2804-2806 (1992)).

Here, the plaintiffs clearly have failed to allege the violation of such a fundamental right. At most, plaintiffs allege that they were deprived of a right created under state land use law, and substantive due process claims arising from improper land use decisions have regularly been

rejected by this Court. See, e.g., Amsden v. Moran, 904 F.2d 748, 757 (1st Cir.1990) ("[o]ur cases make clear that a regulatory board does not transgress constitutional due process requirements merely by making decisions 'for erroneous reasons' or by making 'demands which arguably exceed its authority under the relevant state statutes' ").

Moreover, plaintiffs fail to allege conduct that was "shocking or violative of universal standards of decency." Licari v. Ferruzzi, 22 F.3d 344, 350 (1st Cir. 1994). It is not sufficient merely to allege that the defendants abused their legal authority, or even that they committed outright violations of state law. Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir.), cert. denied, 459 U.S. 989 (1982) ("[s]uch a claim is too typical of the run of the mill dispute between a developer and a town planning agency ... to rise to the level of a due process violation"). Even bad-faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process. Amsden v. Moran, 904 F.2d 748, 754 n.5 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991) ("[i]n the substantive due process context, the requisite arbitrariness and caprice must be stunning"); see also Licari v. Ferruzzi, 22 F.3d 344, 349 (1994) ("rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process").

Here, the plaintiffs allege that the Planning Board improperly imposed certain requirements on a special permit, then revoked the permit when plaintiffs did not timely comply with said requirements. As the First Circuit observed in Creative Environments:

> Every appeal by a disappointed developer from an adverse ruling by a local Massachusetts planning board necessarily involves some claim that the board exceeded, abused or 'distorted' its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. ... It is not enough simply to give these state law claims constitutional labels such as 'due process' ... in order to raise a substantial federal question under section 1983.

680 F.2d at 833. Yet this is exactly what the plaintiffs have done in this instance. At most,

plaintiffs have alleged that the Planning Board imposed architectural requirements on the

Project, which it was not legally authorized to impose. Certainly, this does not even approach

the level of "conscience shocking" conduct required to maintain a substantive due process claim,

and Count IV should therefore be dismissed.

### E. Count III, Alleging MCRA Violations, Fails to State a Claim

Count III alleges that the actions of the defendants "constitute threats, intimidation and

coercion of the plaintiffs in the exercise of their rights" and thus violate the MCRA. Count III

fails because it does not allege facts that would satisfy the requisite elements of an MCRA claim.

To establish a claim under the MCRA, a plaintiff must show that his exercise of state or federal

rights have been interfered with by threats, intimidation, or coercion. See Kelley v. LaForce, 288

F.3d 1, 10 (1st Cir. 2002) (citing Duarte v. Healy, 405 Mass. 43, 537 N.E.2d 1230 (1989)). To

the extent that plaintiffs allege interference with their due process rights,[6] their claim fails

because, even assuming, arguendo, that their due process rights were denied, "[a] direct violation

of a person's rights does not by itself involve threats, intimidation, or coercion, and thus does not

implicate the [MCRA]." Longval v. Commissioner of Corrections, 404 Mass. 325, 333, 535

N.E.2d 588, 593 (1989).

The only "threats" alleged by the Complaint are those alleged in §§15-16:

> … the Board advised the Trustees that there was pending legislation in the Town
> to change building height requirements. … The Board advised the Trustees that, if
> the Trustees did not withdraw the second petition, the Board would deny it and
> that the Trustees would be entangled in litigation for years. … Based upon the
> threats of the Board, the Trustees withdrew the second petition for special permit.

Even accepting the allegations in §§15-16 as true, the plaintiffs' characterization of the

Board's advising the plaintiffs of the pending legislation as "threats" is nonsensical. As

---

[6] Plaintiffs do not specify the state or federal right allegedly interfered with.

plaintiffs acknowledge, during the pendency of the second application for a special permit, an

amendment to the zoning law was proposed that would change maximum building height in the

Town from 35 feet to 30. Complaint, ¶15. Enactment of amendments to a zoning bylaw requires

two-thirds vote of Town Meeting, and thus is beyond the power or control of the Planning Board.

Passage of the amendment at Town Meeting would render the plaintiffs' application, which

sought a building height of 33 feet, 10 inches, beyond the power of the Planning Board to allow.

See G.L. c.40A, §6, ¶1 (zoning amendment applies retroactively to date of first notice of public

hearing on proposed amendment unless special permit has already been granted). That the

Planning Board advised the plaintiffs not to waste their time by submitting an application that

could have been rendered legally unapprovable can hardly be deemed a "threat" by any

interpretation of the word.

Moreover, even if the Board's advice to the plaintiffs is deemed a "threat," such threats

could hardly have resulted in the denial of any constitutional right. As stated in the Complaint,

the second application was submitted on November 15, 1999 and withdrawn shortly thereafter.

Following Town Meeting, at which the proposed zoning amendment was defeated, the plaintiffs

resubmitted their application on May 11, 2000 – just five months after they had submitted their

second application. The third application was approved with conditions, which plaintiffs did not

appeal, and the plaintiffs do not identify a constitutional right of which they were deprived by

waiting five months between submittal of their second and third permit applications.

F.  The Individual Defendants Are Entitled to Qualified Immunity From Plaintiffs'
    Constitutional Claims

In addition to being substantively baseless, plaintiffs' due process and MCRA claims

against the Individual Defendants are barred by the doctrine of qualified immunity. "Qualified

immunity shields government officials performing discretionary functions from civil liability for

money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known." Roldan-Plumey v. Cerezo-Suarez, 115 F.3d 58, 65 (1st Cir. 1997) (quoting Nereida-González v. Tirado-Delgado, 990 F.2d 701, 704 (1st Cir.1993)).

In applying this wholly objective standard, the Supreme Court has emphasized that "[o]ne of the purposes of the Harlow qualified immunity standard is to protect public officials from the 'broad-ranging discovery' that can be 'particularly disruptive of effective government'... For this reason, we have emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." Anderson v. Creighton, 483 U.S. 635, 646 n.6, 107 S.Ct. 3034 (1987) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817, 102 S.Ct. 2727 (1982)).

In reviewing a claim of qualified immunity, two issues must be considered: (1) whether at the time of the alleged conduct there was a "clearly established" constitutional right that was violated; and (2) whether a reasonable person in the defendants' position would have known that his conduct violated that constitutional right. See Frazier v. Bailey, 957 F.2d 920, 929 (1st Cir.1992); Landry v. Mier, 921 F.Supp. 880, 884 (D.Mass. 1996). The burden is on the plaintiffs to plead sufficient facts to establish that a specific, not a general, right was clearly established at the time of the challenged conduct and that the challenged conduct violated that right. Souza v. Pina, 53 F.3d 423, 425 (1st Cir. 1995).

As a preliminary matter, the Complaint does not allege the violation of any clearly established rights of the plaintiffs. As discussed above, there are no facts pled in the Complaint that would permit an inference that the Board violated plaintiffs' due process rights.

Additionally, no reasonable member of a volunteer local planning board would have reason to believe that that the Planning Board's actions violated any clearly-established constitutional right For instance, even if the Court were to determine that the plaintiffs were entitled to notice of revocation of the Special Permit, and that the alleged failure of the Board to supply such notice rose to the level of a due process violation, the Individual Defendants would be qualifiedly immune, since G.L. c. 40A §9 does not contain any requirement for such notice, and no reported decision establishes any such requirement. Cf. Amsden ("it is self-evident [that] no reasonable board member would have thought taking a view in appellant's absence transgressed clearly established constitutional principles"). Moreover, the Planning Board worked with its attorney, an expert in land use matters (see Massachusetts Land Use and Planning Law (2d ed.2002), by Mark Bobrowski), and relied on his legal advice throughout this matter. Exhibit E. As the defendants could not reasonably have known that their conduct violated any clearly established rights of the plaintiffs, they are entitled to qualified immunity on plaintiffs' due process claims.

Moreover, the Individual Defendants are entitled to qualified immunity on plaintiffs' MCRA claim because the same qualified immunity standard that applies to federal constitutional claims brought under Section 1983 applies to claims under the MCRA. Kelley, 288 F.3d at 10 (citing Duarte, 405 Mass. at 46, 537 N.E.2d at 1232).

For the foregoing reasons, the Individual Defendants are entitled to qualified immunity and, therefore, the dismissal of plaintiffs' constitutional claims.

G. Count II, Alleging An Intentional Tort, Should Be Dismissed Because (a) the Individual Defendants are Entitled to Qualified Immunity from this Claim; and (b) the Plaintiffs Fail to Establish the Requisite Elements of Their Claim

Count II alleges that the defendants committed "intentional torts" by requiring the plaintiffs to perform architectural work to the facade and limiting the building to one floor.

Complaint, ¶¶49-50. Count II does not identify the intentional tort alleged; presumably the

plaintiffs assert intentional interference with contractual relations.[7] In the interests of judicial

economy, the Court should exercise pendent jurisdiction and dismiss this claim along with the

related federal claims, for the reasons set forth below, since it derives from a common nucleus of

fact and does not raise any novel or complex issues of state law. Vera-Lozano v. International

Broadcasting, 50 F.3d 67, 70 (1st Cir. 1993).

Count II should be dismissed because (a) the Individual Defendants are entitled to

qualified immunity from plaintiffs' intentional tort claim; and (b) the plaintiffs fail to establish

the requisite elements of a claim for interference with contractual relations.

a.    The Individual Defendants are Entitled to Qualified Immunity

Although typically applied to civil rights claims, courts have held that the doctrine of

qualified immunity shields public officials from liability for intentional torts and other types of

claims. See, e.g., Lynch v. City of Boston, 989 F.Supp. 275, 286 (D.Mass. 1997) (Keeton, D.J.)

(citing Restatement (Second) of Torts § 895D(3) (1977)) ("[q]ualified immunity shields a public

official from tort liability for an administrative act if she is engaged in the exercise of a

discretionary function, or she is privileged and does not exceed or abuse the privilege"); EIC

Development, L.L.C., Essex Capital Partners, Inc. v. Mystic Valley Development Com'n, 2003

WL 1702531 at *15 (Massachusetts Superior Court, Gants, J., 2003) ( "a public official is always

protected by qualified immunity from a claim of tortious interference that rests on the public

official's 'improper motive'") (a copy of this case is attached hereto as Exhibit I); cf. Duarte, 405

Mass. at 49-50, 537 N.E.2d at 1234 (applying "common-law immunity" to statutory invasion of

privacy claim).

---

[7] Defendants request that, if the Court declines to dismiss Count II, the Court treat this part of the Motion as a
Motion for More Definite Statement and order plaintiffs to identify the intentional tort alleged.

The doctrine of qualified immunity protects government officials from suit for discretionary functions performed in good faith in order to "preserve independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985). Such protection is necessary, the Supreme Court has noted, to avoid "impos[ing] upon the [] decisionmaker the burden of mistakes made in good faith in the course of exercising his discretion within the scope of his official duties. ... Denying any measure of immunity in these circumstances would contribute not to principled and fearless decision-making but to intimidation." Wood v. Strickland, 420 U.S. 308, 319, 95 S.Ct. 992 (1975) (applying qualified immunity to school officials sued for expulsion of students). As recognized by the Superior Court in EIC Development, the objectives of qualified immunity are fully satisfied only if its protections apply in the tort context as well as the constitutional one. See EIC Development, 2003 WL 1702531 at *15 ("[t]he common law doctrine of qualified immunity was fashioned to protect public officials from liability from precisely such [tort] claims, so that public officials need not be affected in the performance of their public duties by the threat of a lawsuit regarding conduct that did not violate any clearly established right"). Moreover, limiting the doctrine to constitutional claims would illogically result in protecting public officials from suit for constitutional violations, while subjecting them to suit for claims of less serious, tortuous conduct.

In order to defeat the Individual Defendants' assertion of qualified immunity, the plaintiffs bear the heavy burden of showing that these defendants violated clearly established law. See Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034 (1987); Davis v. Scherer, 468 U.S. 183, 197, 105 S.Ct. 26 (1984). Moreover, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that

right ... the unlawfulness must be apparent." <u>Duca</u> v. <u>Martins</u>, 941 F. Supp. 1281, 1287 (D.

Mass. 1996) (quoting <u>Creighton</u>, 483 U.S. at 640 (1987)).  As discussed in Section F, <u>supra</u>, the

Complaint is devoid of facts demonstrating that a reasonable member of a volunteer local

planning board would know that the Planning Board violated any clearly established law, simply

by failing to notify plaintiffs of the revocation of an expired Special Permit, or by failing to

produce a copy of plans that plaintiffs already possessed.  As the Complaint fails to meet the

plaintiffs' heavy burden to overcome the Individual Defendants' assertion of qualified immunity,

Count II should be dismissed.

> b.    Count II Should Also Be Dismissed Because Plaintiffs Fail to Establish the
>        Requisite Elements of Their Claim

Count II should also be dismissed because the plaintiffs have failed to establish the

requisite elements of a claim for interference with contractual relations.  In order to recover for

this tort, plaintiff must demonstrate: (1) the existence of a business relationship of economic

benefit; (2) defendants' knowledge of such relationship; (3) defendants' intentional and

malicious interference with the relationship; and (4) plaintiffs' actual loss of economic advantage

directly resulting from defendants' conduct.  <u>James L. Miniter Ins. Agency, Inc.</u> v. <u>Ohio Indem.</u>

<u>Co.</u>, 112 F.3d 1240 (1st Cir. 1997); <u>Swanset Development Corp.</u> v. <u>City of Taunton</u>, 423 Mass.

390 (1996).  The Complaint fails to state a claim for this tort because it does not allege conduct

that comprises intentional and malicious interference with a business relationship.

To satisfy the "malice" requirement of this tort, plaintiffs must demonstrate that the

Individual Defendants engaged in interfering conduct with "actual malice . . . a spiteful,

malignant purpose, <u>unrelated to [a] legitimate . . . interest</u>." <u>King</u> v. <u>Driscoll</u>, 418 Mass. 576, 587

(1994) (emphasis added).  This is an extremely high standard, and courts have held that neither

"the motivation of personal gain" nor "personal dislike will . . . warrant an inference of the requisite ill will." Id.

The Complaint does not allege any facts demonstrating that the Individual Defendants acted through improper means or pursuant to an improper motive; indeed the Complaint does not allege any improper motive or improper means on the part of the defendants at all. As the plaintiffs do not satisfy this necessary element of the tort, their claim for tortious interference should be dismissed.

Further, because the plaintiffs' tort claim is based on the Special Permit conditions limiting the building to one floor and requiring architectural changes to the façade, the plaintiffs are estopped from bringing such a claim because, as discussed in Section C, supra, and as more fully briefed in Section III-C of the Town's Memorandum, they did not timely appeal those conditions pursuant to G.L. c.40A, §17.

IV.    CONCLUSION

WHEREFORE, defendants George Jameson, John Callahan, John Papp, Cliff Jacob, Jack Culhane and Daniel Moriarty respectfully request that this Court allow their motion for judgment on the pleadings and dismiss all claims against them.

DEFENDANTS

By their attorneys,

Jonathan M. Silverstein (BBO# 630431)
Jackie Cowin (BBO# 655880)
Kopelman and Paige, P.C.,
31 St. James Avenue
Boston, MA  02116
(617) 556-0007

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on ___3/22/04___

216078/METG/0518